UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA BELLE and THELMA BELLE,

        Plaintiffs,

v.

FIRST FRANKLIN, et al.,                         Case number 08-11465
                                                        Honorable Julian Abele Cook, Jr.

        Defendants.

ORDER

Following the dismissal of an earlier lawsuit on March 31, 2008, the Plaintiffs[1] commenced this *pro se* action several days later (April 4, 2008), contending that the Defendants[2] had violated the fundamental property rights of one of the Plaintiffs, Thelma Belle, as it related to her home in Detroit, Michigan. On July 24, 2008, several of the Defendants with ties to the governmental authority in Wayne County, Michigan ("Wayne County Defendants")[3] filed a single motion in which they collectively requested the Court to (1) dismiss this lawsuit pursuant to Fed. R. Civ. P.

---

[1]Anita Belle is the daughter of Thelma Belle who is the owner and current occupant of the dwelling at 19935 Vaughan in Detroit, Michigan.

[2]The Plaintiffs have identified several Defendants (excluding the "Wayne County Defendants") who, in their judgement, are liable for the injuries which they claim to have suffered; namely, First Franklin a/k/a First Franklin Loan Services a/k/a Home Loan Services, Inc. ("First Franklin"); National City Bank a/k/a National City Corporation ("National City"); First American Title Insurance Company ("First American"); Regional Financial Group Inc.; Greyhound Appraisal & Investments, LLC a/k/a Greyhound Management LLC ("Greyhound"); Nathan B. Hogan; Timothy Cook; Karen Dumas Cook; Cedric Thornton; and Janice Thornton.

[3]The Defendants, who have been informally classified by this Court as the "Wayne County Defendants" only for the purpose of this litigation are as follows: the Wayne County (Michigan) governmental authority; the Wayne County Sheriff's Office, the former Wayne County Sheriff Warren Evans, the Wayne County Register of Deeds, Bernard Youngblood and Michael McMicken.

12(b)(6), and (2) enter a summary judgment in their favor, as authorized by Fed. R. Civ. P. 56(c). On September 22, 2008, one of the Defendants, First American, filed a motion for summary judgment, which was later joined by two other Defendants, First Franklin and National City Bank.[4] More than one year later, on October 9, 2009, the Plaintiffs' filed a motion to amend their complaint.[5] The Court will consider each request in turn.

I.

On April 3, 2002, Thelma Belle filed a set of pleadings in the Bankruptcy Court for the Eastern District of Michigan, seeking to obtain fiscal protection pursuant to Chapter 7 of the Bankruptcy Code in an attempt to avoid foreclosure on her home. The official records in this cause indicate that she was discharged by the Bankruptcy Court on July 10, 2002.

On August 29, 2002, a non-party, Mortgage Ltd, purchased her house at a sheriff's sale. Thereafter, Thelma Belle contacted her cousin, the Defendant, Timothy Cook, with the hope that he could intervene and help her to reclaim the house. At a closing which was conducted by an agent of First American, Cook purchased the home from Mortgage Ltd. for $48,740.12. One month later, he sold the property to the Defendant, Cedric Thornton, for the sum of $108,000 at a separate closing that had been conducted by the same First American agent. According to the Plaintiffs, Cook conspired with other Defendants to artificially inflate the appraised value of the Vaughan

---

[4]These two Defendants joined with First American in its motion on December 4, 2009.

[5]The Plaintiffs have unsuccessfully sought to amend their amended complaint on two prior occasions; namely, on November 17, 2009 with an "Amended Motion & Brief for Leave to Amend and Supplement Complaint," and on December 8, 2009 with a "Second Amended Motion & Brief for Leave to Amend & Supplement Complaint."

2

street property.[6]

On April 9, 2003, Cedric Thornton granted the other Plaintiff, Anita Belle, an option to purchase her mother's home for $86,400. In turn, she assigned her interest in the option to her mother. Although the option expired on October 8, 2004, Thelma Belle was able to recover her home with a purchase from Cedric Thornton on November 11, 2004 for $115,000 after obtaining a mortgage from First Franklin.

Retrospectively, the Plaintiffs now identify several alleged deficiencies with the closing, which they attribute to the Defendants; namely, (1) an inflated purchase price (which resulted in inordinately high taxes); (2) a sale executed without a purchase agreement or a HUD-1 statement; (3) a statutorily inadequate Truth in Lending Act ("TILA") form, in violation of 15 U.S.C. § 1601 et seq.; (4) the failure to provide them with the disclosures that are required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2601 et seq.; (6) an excessive amount of prepaid finance charges, contrary to 12 U.S.C. § 2607; (7) expenses that were improperly omitted from First Franklin's "Itemization of Amount Financed," which included outstanding property taxes and water bills left by Cedric Thornton; (8) data that was falsified on the mortgage application form in order to qualify Thelma Belle for a mortgage payment that, at the time, would have consumed more than half of her social security benefits; and (9) the negligent or intentional failure by First American to record the warranty deed (which impacted her tax assessment and resulted in an overcharged escrow account, contrary to RESPA, and ultimately caused her to default on the mortgage). They also complain that the Defendants (1) deprived them of their constitutional rights

---

[6]The Plaintiffs contend that the average home sales during the first quarter of 2003 in the area were approximately $82,000.

under 42 U.S.C. § 1982 and 42 U.S.C. § 1983, (2) committed fraud and conspiracy, and (3) violated, *inter alia,* the American with Disabilities Act ("ADA"), the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act, Mich. Comp. Laws 445.1651 et seq., and the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 et seq.

Moreover, the Plaintiffs assert that First American waited to record Thelma Belle's mortgage until May 4, 2007, and only recorded her deed three days later ( May 7, 2007). They also contend that on May 10th, First Franklin assigned her mortgage to another Defendant, National City, without giving proper notice, contrary to the requirements of RESPA. This assignment allegedly took place while collection and foreclosure proceedings continued in the name of First Franklin. The Plaintiffs also identify several problems with the foreclosure process which, in their opinion, was not - but should have been - a judicial foreclosure. According to the Plaintiffs, these problems include (1) the publication of the notice of default one day prior to the recording of the assignment which rendered it legally defective; (2) the failure of the Defendants to post a notice of default on the premises; and (3) the failure of the Defendants to republish the notice of default after the sheriff's sale was adjourned from June 20, 2007 to August 29, 2007.

The Plaintiffs also submit that they hold a federally granted "land patent" on the property, which, in their opinion, means that the land could not "become liable to satisfaction of debts contracted prior to issuance of the land patent." *Complaint* at ¶7 g-h. This land patent was created on June 19, 2007 (one day before the originally scheduled sheriff's sale) when Anita Belle filed an "Affidavit of Land Patent"and a "Declaration of Assignee's Update of Patent" with the Wayne

4

County Register of Deeds.[7] Attached to these documents, the Plaintiffs included a copy of a purported land patent dated September 13, 1836 from the United States to a party with the surname of Woods. Anticipating that the Court may deem their "Declaration of Assignment of Land Patent" to be invalid, the Plaintiffs request that all deeds and mortgages on the property be set aside for fraud inasmuch as the original owner/assignee of the land patent "retains superior title." They also claim ownership in the house on Vaughan street by virtue of their adverse possession for "nearly 35 years of uninterrupted homestead possession of the property" without the original land patent owners/assignees asserting any claims of rights of eviction.

As a result of all of the foregoing, the Plaintiffs seek to obtain (1) damages of, *inter alia,* thirty-three million dollars ($33,000,000), (2) injunctive relief, (3) a declaratory judgment regarding the wrongfulness of the Defendants' acts, (4) a rescission of the mortgage agreement and the promissory note, (5) a declaration of a quiet title, (6) attorney's fees and costs, and (7) the initiation of a criminal investigation into the activities and the prosecution of those persons/entities who are responsible for their injuries.

II.

Initially, the Plaintiffs seek leave to amend their complaint wherein they could specifically allege civil RICO claims, insurance fraud, judicial misconduct by the judges at the 36th District

---

[7]As part of their claim against the Wayne County Defendants, the Plaintiffs allege that on June 18, 2007, when they first attempted to record the land patent at the Wayne County Register of Deeds office, the clerks wrongfully refused to file the document. The Plaintiffs also allege that the staff members at that office, including the Defendant, Michael McMicken, (1) wrongfully required Thelma Belle to file an affidavit in addition to the land patent, which they contend is not required by Michigan law; and (2) mischaracterized the land patent as an affidavit by Anita Belle rather than as a land patent for Thelma Belle, in violation of 42 U.S.C. §§ 1982, 1983.

Court, and to raise other pertinent issues. Under Fed. R. Civ. P. 15(a)(2), a court may "freely give leave [to amend a pleading] when justice so requires." This rule reaffirms the principle that cases should be tried on their merits "rather than [on] the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)). Nevertheless, a court is entitled to consider various factors that weigh in favor of denying a leave to amend, such as undue delay, bad faith, or prejudice to the opposing party. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). If a proposed amendment would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may also disallow the proposed modification on the ground that it would be futile. *Thiokol Corp. v. Dept. of Treasury*, 987 F.2d 376, 382 (6th Cir.1993).

After carefully examining the record, the Court concludes that the Plaintiffs' request to amend their complaint must be denied. First, as First American correctly pointed out in its pleadings and during oral argument, its dispositive motion had been pending for more than one year when the Plaintiffs filed their initial motion to amend. In the case of the Wayne County Defendants, their motion for summary judgment had been filed for more than fourteen months. And even though the Plaintiffs appear before the Court as *pro se* litigants, they have been aware of the alleged deficiencies in their complaint since September of 2008, when First American's motion was initially filed. While it is true that the Court stayed this case for sixty days in January of 2009, and again in late July of 2009,[8] the Court finds that the Plaintiffs were hardly

---

[8] The Court stayed the case for sixty days on January 14, 2009 to allow the Plaintiffs to obtain counsel. On July 29, 2009, the Court granted pro bono counsel leave to withdraw from the case, gave the Plaintiffs sixty days within which to find new counsel, and an additional fourteen days within which to respond to the currently pending dispositive motions filed by the Wayne County Defendants and First American.

6

unsophisticated about handling the transfer of their post-sheriff's sale documents, quickly responding to the issues in First American's summary judgment motion, or asserting the alleged deficiencies in the foreclosure process with reasonable clarity. Specifically, although the Plaintiffs have acted without the benefit of counsel, they were savvy enough to file a quit claim deed with the Wayne County Register of Deeds on October 16, 2008 – only approximately two and one half weeks after receiving First American's motion. This act had the immediate effect of conferring standing upon Anita Belle, inasmuch as the quit claim deed gave her an ownership interest in the property on Vaughn street. Although it is unclear whether the Plaintiffs undertook this procedural step in response to First American's argument that Anita Belle lacked standing to pursue this case, their conduct strongly suggests that they had the sophistication to be more responsive to the demands of this litigation. Yet, they failed or neglected to attempt to amend their complaint until October 9, 2009, and continued to move the proverbial target by filing further amendments in November and December of 2009. In light of the Plaintiffs' undue delay, each of their requests to amend their complaint must be, and are, denied.

Moreover and after a careful examination, the Court has also concluded that the claims within the Plaintiffs' proposed amended complaint (1) are futile under the current federal rules of evidence and procedure, and (2) could not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) inasmuch as these allegations do not state a claim upon which relief can be granted. When considering a motion to dismiss, the Court must construe the complaint in a light that is most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in the plaintiff's favor. *Tipton v. Corr. Med. Services, Inc.,* No. 08-421, 2009 WL 2135226 (W.D.Mich. July 15, 2009). However, "[a] pleading that offers 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Claims are capable of surviving a Rule 12(b)(6) motion only if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level . . . on the assumption that all [of] the allegations in the complaint are true . . . ." *Twombly*, 550 U.S. at 555.

First, the Plaintiffs' proposed amended complaint (which is largely conclusory) accuses First American of participating in a "fraud and cover up" in procuring an allegedly inflated appraisal of the property on Vaughan street for the April 4, 2003 sale to Cedric Thornton. Moreover, the Plaintiffs allege that First American negligently or fraudulently failed to record Thelma Belle's warranty deed, which she obtained at the November 11, 2004 sale. According to the Plaintiffs, this omission led to excessive taxation and insurance escrow, and constituted a violation of several laws, "including, but not limited to" the Mortgage Broker, Lenders, and Servicers Licensing Act, [Mich. Comp. Laws] § 445.1651 et seq., the Consumer Financial Services Act, [Mich. Comp. Laws] § 487.2051 et seq., the Michigan Consumer Protection Act, [Mich. Comp. Laws] § 445.901 et seq., the Michigan Insurance Code, [Mich. Comp. Laws] § 500.100 et seq., the Uniform Commercial Code, [Mich. Comp. Laws] § 440.110 et seq., Michigan's foreclosure by advertisement statutes, [Mich. Comp. Laws] § 600.3201 et seq., the federal mail and wire fraud statutes, 18 U.S.C. § 1001, 1010, RESPA, TILA, Regulation Z, RICO, the ADA "and other federal statutes and constitutional provisions."

As an initial matter, First American correctly notes that the Plaintiffs' TILA, RESPA, and Regulation Z claims which related to conduct that occurred in 2003 and 2004, are barred by their

8

respective one-year statutes of limitations. *See generally,* TILA, 15 U.S.C. § 1640(e) ( "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."; this also encompasses the Regulation Z claims, inasmuch as these regulations implement TILA); 12 U.S.C. § 2614 (noting that for violations of RESPA's anti-kickback provisions at § 2607 – which it appears the Plaintiffs are claiming – "[a]ny action . . . may be brought in the United States district court . . . within . . . 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation."). Moreover, the Plaintiffs have not established that 18 U.S.C. § 1001 or 18 U.S.C. § 1010 – both of which are criminal statutes – creates a private cause of action upon which a plaintiff may rely in civil litigation.

In addition, the Plaintiffs' claims under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.904(3) must also fail, as its provisions expressly provide that "[t]his act does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by chapter 20 of the insurance code of 1956, 1956 PA 218,[Mich. Comp. Laws 500.2001 to 500.2093."). Because, as a title insurance company, First American is engaged in the business of insurance, it is subject to the provisions in chapter 20 of the insurance code. Hence, the Plaintiffs' Consumer Protection Act claims must fall. *See generally, Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662, 668 (E.D. Mich. 2008). Further, as to the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act, the Plaintiffs concede that the acts by First American, about which they complain, are not governed by this statute.

Because none of the foregoing claims would survive a Rule 12(b)(6) request for dismissal, the Court denies the Plaintiffs' motion to amend their complaint as to those counts.

The Plaintiffs rely heavily on their allegations that First American, First Franklin and the other Defendants committed fraud and/or negligence. Specifically, they assert that Timothy Cook (1) conspired with other persons to deceptively and artificially inflate the appraised value of the home on Vaughn street to $115,000, and (2) forged closing documents to make it appear that two other individuals had purchased the home with a sizeable down payment when, in truth, the property was purchased with no money down, and that "escrow agent, Lincoln Title, as an agent of. . . First American Title," participated in "the fraud and cover up." (Proposed Amended Complaint at ¶¶ 26, 28). In the Plaintiffs' judgment, the Defendants did so "in order to perpetrate the fraud of converting a no-money-down, 100% financing deal to the appearance of a 10% down payment and 90% financing deal." *Id.* at ¶¶ 33. The Plaintiffs have also accused First American of negligently or fraudulently failing to record Thelma Belle's warranty deed until more than two years after the sale, which had the effect of leaving the property in an improper tax bracket, subjecting Thelma Belle to an overcharge in escrow, and causing her to default in the payments on the loan. *Id.* at ¶ 40, 42.

Importantly, the Plaintiffs' proposed amended complaint does not clearly identify any of the facts which would support causes of action for either of their tort law claims against First American. *See generally, Cooper v. Auto Club Ins. Assoc.,* 481 Mich. 399, 414 (2008) (in order to prevail on a fraud claim, the plaintiff would have to show that (1) the insurer made a material representation; (2) it was false; (3) when the statement was made, the insurer knew that it was false, or the insurer made it recklessly without any knowledge of its truth and as a positive assertion; (4) the insurer made the statement with the intention that it would be acted upon by the insureds; (5) the insureds acted in reliance upon the statement; and (6) the insureds consequently suffered

injury); *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 466-67 (1992) (to establish a claim for negligence, a plaintiff must show the existence of "(1) duty, (2) general standard of care, (3) specific standard of care, (4) cause in fact, (5) legal or proximate cause, and (6) damage."). Here, aside from rendering the general accusation that one of its agents was involved with inflating the appraised value of the home, the Plaintiffs have not pled sufficient facts which connect First American to the acts of this other company, or otherwise plausibly suggest that it played a role in the purported fraudulent cover up. Indeed, even if one accepts the Plaintiffs' argument that the home was sold pursuant to an inflated appraisal, the Plaintiffs have not pled enough facts to allow the Court to reasonably conclude that it was either First American or its purported agent that either knowingly or recklessly made the false material representation regarding the home's value. Nor have the Plaintffs alleged facts that indicate that the company engaged in such misconduct with the intent of inducing the Plaintiffs' reliance. Accordingly, the Plaintiffs' claims for fraud against First Franklin cannot survive.

Moreover, as to the Plaintiffs' negligence claims against First American, the Court is persuaded by the Defendant's argument that under Michigan law, a company which offers title insurance to support a land transaction generally cannot be liable in tort, and that in such cases, the plaintiff's claim will usually be based on a theory of breach of contract. *See, Mickam v. Joseph Louis Palace Trust,* 849 F Supp 516, 521-22 (E.D. Mich. 1993) ("parties in Michigan generally purchase title insurance . . . because they prefer the certainty of insurance. In purchasing insurance, a buyer acquires a contractual right against the insurer for coverage of title defects . . . . To protect the rights and expectations of the parties, a title insurer should be liable in accordance with the terms of the title policy only and should not be liable in tort. To hold otherwise does violence to

the whole concept of insurance."). Accordingly, the Court denies the Plaintiffs' motion to amend their complaint as to this particular claim as well, inasmuch as the Plaintiffs' arguments would be futile.

A careful review of the remaining allegations in the Plaintiffs' proposed amended complaint reveals that it contains the very sort of "threadbare recitals of the elements of a cause of action" against which the *Iqbal* Court cautioned. Aside from referencing the general statutory provisions which the Plaintiffs deem relevant, their proposed pleading offers no guidance whatsoever into the specific sections of any of the foregoing statutes that support their claims. For example, in terms of the Michigan Consumer Financial Services Act, Mich. Comp. Laws § 487.2051, et seq., there are more than thirty relevant subsections which could possibly serve as the basis for liability. Nevertheless, the proposed amended complaint makes no attempt to identify any specific theory of liability, or to direct the Court to the most relevant legal provisions of the statute. The same is true of those allegations which were raised pursuant to the Michigan Insurance Code, the Michigan Uniform Commercial Code, the Michigan foreclosure by advertisement statutes, and the Americans with Disabilities Act. Even construing the complaint liberally in favor of the *pro se* litigants cannot save the pleading here, as the Plaintiffs have simply failed to set forth sufficient facts that would enable the Court to assess whether their claims are "plausible" under *Iqbal* standards. The Plaintiff's motion to amend their complaint must therefore be denied.

### III.

As noted earlier, the Wayne County Defendants have filed a joint motion to dismiss the Plaintiffs' complaint for failure to state a claim upon which relief can be granted, and/or for a summary judgment. In 1986, the Supreme Court opined that "[o]ne of the principal purposes of

the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Under Federal Rule of Civil Procedure 56(c), a motion for a summary judgment should be granted if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Here, the burden is on the movants to demonstrate the absence of a genuine issue of a material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the Court should examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir. 1991). It is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, a summary judgment must be entered only if (1) the evidence clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id.* at 252, or (2) the opponent fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Importantly, the presentation of a mere scintilla of supporting evidence is grossly insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

As to the Wayne County Sheriff's Office and the Wayne County Register of Deeds, the Wayne County Defendants argue that, as a matter of law, neither is a legal entity that can sue or be

sued. They also submit that the Sheriff's Office falls within the jurisdictional authority of the Wayne County government, and as such, is not a legally separate entity for the purposes of this lawsuit. Support for the Wayne County Defendants' position can be found within the decisions of other courts that sit in this district. *See, e.g., Sumner v. Wayne County,* 94 F. Supp. 2d 822, 827 (E.D. Mich. 2000) ( "[t]he [Wayne County] Sheriff's Department is merely a department within . . . Wayne County . . . and as such, is not legally separate from the County. . ." and ultimately concluding that "Wayne County is a proper defendant, [while] the Sheriff's Department is not."); *Brown v. HSBC Bank N.A.,* No. 09-14616, 2010 WL 729008 at *1 (E.D. Mich. Feb. 25, 2010) (relying on *Sumner* to reach same conclusion regarding inability of Oakland County Sheriff's Department to be sued); *Howard v. Wayne County Sheriff's Office et al*, No. 08-13501, 2009 WL 2849135 at *3 (E.D. Mich. Sep. 1, 2009) (dismissing civil rights claim against Wayne County Sheriff's Office brought pursuant to 42 U.S.C. § 1983 based on *Sumner* and noting that Plaintiffs were required to pursue the claim against the County). In their response, the Plaintiffs do not contest the Wayne County Defendants' arguments, and do not respond with any form of persuasive contrary authority. Accordingly, the Court grants the Wayne County Defendants' motion to dismiss the Wayne County Sheriff's Office and the Wayne County Register of Deeds as Defendants in this lawsuit.

The Wayne County Defendants also submit that Warren Evans, Bernard Youngblood and Michael McMicken did not have any personal involvement in the sheriff's sale or land patent recording process as suggested by the Plaintiffs. These three Defendants support their position with affidavits in which they aver that they have no personal involvement in any of the alleged conduct claimed by the Plaintiffs in their complaint. Although the Plaintiffs indicate that they "could"

14

submit an affidavit to rebut McMicken's affidavit, they have failed to do so. Instead, the Plaintiffs note that they would rather seek leave to remove the land patent allegations from their complaint as well as to remove the Register of Deeds, McMicken and Youngblood as the Defendants in this action. Under the circumstances, the Court finds that the entry of a summary judgment in favor of Evans, Youngblood and McMicken is appropriate, inasmuch as the Plaintiffs' have failed to rebut their affidavits with contrary evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Finally, the Court agrees with the Wayne County Defendants' assessment that a dismissal of the Plaintiffs' claims against them for their failure to state a claim under 42 U.S.C. § 1983 is appropriate. Here, the Plaintiffs allege that the Wayne County Defendants had "violated [Thelma Belle's] constitutional rights pursuant to the Fifth Amendment and trespassed against her federal land patent contrary to 42 U.S.C. 1983 . . . . " in violation of "Michigan statutes and Plaintiff's federally protected constitutional rights as outlined in 42 U.S.C. 1982 . . . and elsewhere by refusing to timely and properly file Plaintiff's land patent." (Complaint at ¶¶ 6, 51). However, as to both allegations, the Plaintiffs have failed to plead a set of facts which are sufficient to reasonably support their claims. Assuming, for instance, the Plaintiffs' Fifth Amendment argument centers around a due process deprivation, the Plaintiffs have not identified any facts which could plausibly suggest that they are entitled to relief. Similarly, while 42 U.S.C. § 1982 protects citizens against racial discrimination in the purchase, lease, and sale of real and personal property, the Plaintiffs' complaint contains no facts which even remotely indicate that any of the Wayne County Defendants took actions against them based on their race. As such, the Plaintiffs cannot prevail on these

15

claims as a matter of law, and the Wayne County Defendants are entitled to a summary judgment on these aspects of the Plaintiffs' complaint. *See generally, Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) ("To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law.").

IV.

Finally, as to the motion for a summary judgment by First American Title and joined by First Franklin Loan Services and National City Bank, the Court relies upon its analysis in Section II above, based on the similarities between the existing and proposed amended complaint. The vast majority of the Plaintiffs' claims in their existing complaint cannot prevail as a matter of law. Moreover, as to their tort claims (i.e., negligence and fraudulent misrepresentation), the Plaintiffs have not proffered sufficient evidence to sustain either of these counts. While the current complaint quite clearly alleges some level of wrongdoing by the Defendants, the Plaintiffs have not borne out their claims with any evidentiary proof, as is required in order to defeat summary judgment. As to the negligence count against First American, the Plaintiffs have not overcome a provision in paragraph 8 of their contract with this Defendant that absolves the company of liability once it establishes the title, which eventually occurred here. *See Policy of Title Insurance, Conditions and Stipulations at Section 8* (noting that "[i]f the Company establishes the title, or removes the alleged defect, lien or encumbrance . . . it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby."). Absent some contrary theory or provision - which the Plaintiffs have not shown - it appears that this section of the parties' agreement controls, excusing First American of any liability for negligence.

V.

Therefore, for the reasons that have been stated above, the Plaintiffs' three motions to amend their complaint (Docket Entry No. 71, 79 and 82) are denied in their entirety. Additionally, the Court grants the motion to dismiss and/or for a summary judgment by the Wayne County Defendants (Docket Entry No. 27). Finally, the Court grants the motion for a summary judgment that has been filed on behalf of First American and joined by First Franklin and National City (Docket Entry No. 33).

IT IS SO ORDERED.

Dated: September 3, 2010　　　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　　Detroit, Michigan　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participant Anita Belle, 19935 Vaughan, Detroit MI 48219 on September 3, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager