UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA BELLE and THELMA BELLE,

        Plaintiffs,

                                                               Case number 08-11465

v.                                                Honorable Julian Abele Cook, Jr.

FIRST FRANKLIN, et al.,

        Defendants.

ORDER

       The Plaintiffs, Anita Belle and Thelma Belle, both of whom are acting without the benefit of an attorney, initiated this lawsuit on April 4, 2008 in an effort to rectify what they perceived as, among other things, a legally defective foreclosure proceeding that had been conducted by the Defendants.[1]  The Court, acting in response to a series of motions for dismissal and summary judgment by the Defendants, granted their requests for dispositive relief. The Court also denied a request by the Plaintiffs for permission to amend their complaint.

       The Court has now been presented with a motion by the Plaintiffs who seek a

---

[1] As noted in previous orders, the Plaintiffs have identified the following individuals and corporate entities as Defendants in this litigation: (1) First Franklin a/k/a First Franklin Loan Services a/k/a Home Loan Services, Inc. ("First Franklin"); (2) National City Bank a/k/a National City Corporation ("National City"); (3) First American Title Insurance Company ("First American Title"); (4) Regional Financial Group Inc. ("Regional Financial"); (5) Greyhound Appraisal & Investments, LLC a/k/a Greyhound Management LLC ("Greyhound"); (6) Nathan B. Hogan; (7)Timothy Cook; (8) Karen Dumas Cook; (9) Cedric Thornton; and (10) Janice Thornton.  The Plaintiffs have also accused the following individuals with actionable torts, all of whom are allegedly associated with the Wayne County government and its Sheriff's department (namely, Warren Evans; Bernard Youngblood; and Michael McMicken (collectively hereafter known as "the Wayne County Defendants").

reconsideration of the Court's order. For the reasons that have been stated below, the Plaintiffs' motion will be denied.

I.

According to the Local Rules of this Court, a party who seeks the reconsideration of an order must demonstrate the existence of "a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled," and demonstrate that correcting the defect will result in a different disposition of the case. E.D. Mich. L. R. 7.1(h)(3). A "palpable defect" is described as that which is obvious, clear, unmistakable, manifest, or plain. *Smith ex rel. Smith v. Mount Pleasant Public Schools*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003). A motion for reconsideration is not an appropriate mechanism by which a party may (1) unveil a legal theory for the first time, (2) raise legal arguments which should have been submitted during the pendency of an earlier motion, or (3) present evidence that could have been proffered during the pendency of the original motion. *Deepen Const. Co., Inc. v. International Union of Bricklayers et al,* 739 F. Supp. 2d 986, 1004 (E.D. Mich. 2010). Furthermore, it is the policy of the Court that "motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication" will not be granted. *Id.*

II.

The key facts which underlie the Plaintiffs' lawsuit stem from allegations that the Defendants violated their fundamental property rights, as guaranteed by the United States Constitution.

On August 29, 2002, after foreclosure proceedings had been completed, Mortgage Ltd. - a non-party to this litigation - purchased the Plaintiffs' property during a sheriff's sale. Notably,

a relative of the Plaintiffs, Timothy Cook, assisted them in reclaiming their home by purchasing it from Mortgage Ltd. for $48,740.12 at a closing that was conducted by First American Title. One month later, Cook sold the same property to Cedric Thornton for a much higher price (to wit, $108,000) during a separate closing transaction that was conducted by the same agent of First American Title. According to the Plaintiffs, Cook conspired with the other Defendants to artificially inflate the appraised value of their property. Eventually, the Plaintiffs were able to recover their home with a purchase from Thornton on November 11, 2004 for a slightly higher price (to wit, $115,000) after obtaining a mortgage from First Franklin. This lawsuit followed.

In their complaint, the Plaintiffs identified several alleged deficiencies relating to their purchase of the property from Thornton, including (1) an inflated purchase price; (2) a sale that was executed without a written purchase agreement or a HUD-1 statement; (3) a statutorily inadequate Truth in Lending Act ("TILA") form, in violation of 15 U.S.C. § 1601 et seq.; (4) the failure to provide them with the disclosures that are required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2601 et seq.; (5) a deprivation of their constitutional rights under 42 U.S.C. § 1982 and 42 U.S.C. § 1983; (6) the commission of fraud and conspiracy, and (7) an assignment of the mortgage by First Franklin to National City without giving proper notice, contrary to the requirements of RESPA.

Acting on the basis of these accusations, the Plaintiffs seek to obtain (1) damages of thirty-three million dollars ($33,000,000), (2) injunctive relief, (3) a declaratory judgment which verifies the wrongfulness of the Defendants' actions, (4) a rescission of the parties' mortgage agreement and the promissory note, (5) the declaration of a quiet title, (6) attorney's fees and costs, and (7) the initiation of a criminal investigation into the activities and the prosecution of those

persons/entities who are responsible for their injuries.

On October 9, 2009 - and later on December 8th of the same year - the Plaintiffs filed motions which were designed to acquire authority from the Court to amend their complaint. However, on September 3, 2010, the Court declined to grant the Plaintiffs permission to amend their complaint, in part, because the proposed amendment was untimely. More importantly, the Court construed their claims in the proposed amended complaint to be futile. As to the latter point, the Court opined that the Plaintiffs' claims under RESPA's anti-kickback provisions at 12 U.S.C. § 2607 were filed beyond the applicable one year statute of limitations. The Court also rejected an argument by the Plaintiffs which sought to obtain a declaration that the sheriff's sale by the Wayne County Defendants was invalid.

In requesting a reconsideration of this order, the Plaintiffs initially challenge the finding by the Court that their motion to amend their complaint was untimely. The Court rejects this argument at the outset because it was clear that untimeliness was neither the sole nor the primary basis for its decision to reject the proposed amended complaint. Contrary to the Plaintiffs' arguments, the Court - after having given full consideration to the substantive aspects of their proposed amended complaint -  found many of the claims asserted therein to be without merit. Because there were clear alternative grounds upon which the Court made a decision to deny the Plaintiffs' requested relief, their effort to obtain reconsideration on this basis must fail as it would not change the ultimate disposition of this case.

Next, the Plaintiffs suggest that the Court erred in finding that their claims under TILA and RESPA were barred by the applicable one-year statute of limitations. As to the TILA limitations period, the Plaintiffs cite *McIntosh v. Irwin Union Ban & Trust Co.*, 215 F.R.D. 26, 30 (D. Mass.

4

2003) for its observation that "if an assignee failed to disclose its assignment, then the one-year statute of limitations begins when the consumer discovers or should have discovered the undisclosed assignment." (Motion for Reconsideration at 5). However, a close reading of the *McIntosh* opinion reveals that it does not stand for the proposition for which the Plaintiffs have cited. The central question presented in *McIntosh* was whether the plaintiffs could rescind their mortgage contract with a lender once their financial obligations had been satisfied by full and complete payment. *Id.* There, the court considered the statute of limitations issues only tangentially, and, in doing so, merely observed that a plaintiff may bring a rescission action "for three years [after the closing of a loan] if a material disclosure as defined in the implementing regulations is not made." *Id.* The *McIntosh* court was not dealing with undisclosed assignments - as the Plaintiffs have asserted here - but rather it addressed the need to inform consumers about their ability to avoid payment of certain prepayment penalties. In the judgement of the Court, *McIntosh* is inapplicable to the case at bar and does not support the Plaintiffs' argument.

As to the Plaintiffs' claim that the Court should have applied a three year - as opposed to a one-year -statute of limitations period to the RESPA claims under 12 U.S.C. § 2605, the Court notes that, even assuming this argument to be correct, the Plaintiffs' claim would still be futile under Fed. R. Civ. P. 12(b)(6). Standing alone, their respective allegations that a defendant violated its statutory duties does not state a RESPA claim. Although it is a prerequisite to liability under the statute, the Plaintiffs have neither pled nor shown that they suffered any actual damages based on National City's claimed omissions in failing to disclose the assignment. *See* 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure."); *Hutchinson v.*

*Delaware Sav. Bank. FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006). Absent such allegations of actual pecuniary damages and proximate cause, the Court must, and does, find that the Plaintiffs have failed to state a claim upon which relief can be granted for the alleged RESPA violations. The Plaintiffs' request for a reconsideration of the ruling by the Court on their RESPA claims will therefore be denied, since resolving the alleged defect in their favor would not produce a different disposition of the issue.

Finally, the Plaintiffs argue that the Court failed to adequately consider their claim that the Wayne County officials who conducted the sheriff's sales were not properly appointed to conduct their duties. The Plaintiffs' argument, though not articulated directly in their pleading, appears to be that, as a matter of law, (1) the Wayne County Undersheriff lacks the authority to appoint special deputies, and (2) any resulting sheriff's sales and sheriff's deeds that were issued pursuant thereto are invalid. The Court finds this argument to be unavailing. The undersheriff is required to take the same oath of office as the sheriff and has the same duty to obey and enforce the laws of the state. *People v. Bommarito,* 33 Mich. App. 385, 388-389 (1971). In the event of the sheriff's inability to perform his official duties (i.e., death, illness, etc.), the undersheriff is authorized to execute the office of sheriff until a replacement officer is elected and qualified. Mich. Comp. Laws § 51.72. When viewed in light of an exception set forth in Mich. Comp. Laws § 51.73,[2] it is

---

[2]That statute provides:

Every appointment of an under sheriff, or of a deputy sheriff, and every revocation thereof, shall be in writing under the hand of the sheriff, and shall be filed and recorded in the office of the clerk of the county; and every such under sheriff or deputy shall, before he enters upon the duties of his office, take the oath prescribed by the twelfth article of the constitution of this state. But this section shall not extend to any person who may be deputed by any sheriff to do a particular act only. Mich. Comp. Laws § 51.73.

apparent that the Plaintiffs' argument is flawed. Although this statute requires the appointment of an undersheriff or a deputy sheriff to be in writing "under the hand of the sheriff," (i.e. by the sheriff), the statute specifically excludes from that requirement those persons deputed by "any"[3] sheriff to do a particular act, namely, a special deputy. Here, Sterling Harris was appointed by the undersheriff as a special deputy. His appointment was in writing (as required by Mich. Comp. Laws § 51.70)[4] and, consistent with Mich. Comp. Laws § 600.3216, outlined the particular acts related to the holding of sheriff's sales for which Harris would be responsible. Thus, like the court in *English v. Flagstar Bank*, No. 09-11705, 2009 WL 4730450, at *2-3 (E.D. Mich. Dec. 9, 2009), this Court concludes that, although a special deputy must be appointed in a written document, this appointment need not be made by the sheriff. Thus, the Court determines that Harris' appointment was valid under Michigan law. *Tatar v. Trott*, No. 10-12832, 2011 WL 3706510 (E.D. Mich. Aug. 3, 2011) (finding that special deputy was properly deputized to conduct foreclosure sales for Wayne County); *Drew v. Kemp-Brooks*, No. 10-14437, ___ F. Supp. 2d ___, 2011 WL 2936103, *6 (E.D. Mich. Jul. 21, 2011) ("[Mich. Comp. Laws] § 51.70 specifically allows a sheriff to appoint special deputies to perform any particular acts that the Sheriff himself is authorized by law to perform.") (citing *Tower v. Welker*, 93 Mich. 332, 335 (1892) (finding that Michigan law allows sheriffs to appoint deputies and undersheriffs who, once appointed, have all of the ministerial powers of a

---

[3] The Court reads the plain meaning of the word "any" as used in §51.73 to mean "every" or "all."

[4] That statute provides, in relevant part:

> Each sheriff may appoint 1 or more deputy sheriffs at the sheriff's pleasure, and may revoke those appointments at any time. Persons may also be deputed by a sheriff, by an instrument in writing, to do particular acts, who shall be known as special deputies and each sheriff may revoke those appointments at any time. . . .

sheriff: "In general, all ministerial duties which the principal himself has a right to perform may be discharged by a deputy."); *Kubicki v. Mortgage Electronic Registration Sys.*, ___ Mich. App.___, No. 295854, 2011 WL 668118 (Feb. 22, 2011) (confirming that special deputy appointed under Mich. Comp. Laws § 51.70, such as Harris and Sims, can perform foreclosure sales). Moreover, inasmuch as the Plaintiffs have not presented any persuasive evidence to support their argument that the then-sheriff Robert Ficano's appointment of Terri Sims as a deputy sheriff was invalid, these claims must be, and are, rejected.

III.

Therefore and for the reasons that have been stated above, the Plaintiffs' motion for reconsideration is denied.

IT IS SO ORDERED.

Dated:  October 28, 2011            S/Julian Abele Cook, Jr.
        Detroit, Michigan           JULIAN ABELE COOK, JR.
                                    United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on October 28, 2011

                                    s/ Kay Doaks
                                    Case Manager